Robert J. Barr and Howard R. Yocum, Appellants, *v.* the City of Philadelphia, Charles F. Warwick, Mayor of said City, and John M. Walton, City Controller.

[Marked to be reported.]

*Municipal corporations—Voting on increase of debt—Constitutional law—Constitution, article 9, section 8—Act of June 9, 1891.*

Under the Act of June 9, 1891, P. L. 252, carrying into effect article 9, section 8 of the constitution relating to the increase of municipal debt by a vote of the people, the electors are to assent or dissent to or from the increase of the indebtedness, not to or from the purposes to which it is to be applied, and it is not necessary that they shall vote separately on each item set apart for the particular purpose for which the debt is about to be increased. A vote with a ballot labeled on the outside " Increase the debt," and containing within " No increase of debt," " Debt may be increased," with the total amount and the various purposes to which the total is to be devoted, is a sufficient compliance with the law.

*Municipal corporation—What constitute corporate authorities under act of June 9, 1891.*

It was not the intention of the Act of June 9, 1891, P. L. 252, by its phraseology and the use of the word " desire," that only those particular individuals constituting the corporate authorities at the time of the passage of the ordinance signifying a desire to increase the debt should be permitted to make the increase. Such a construction of the act would lead to insurmountable practical difficulties.

*Municipal corporation—Delegation of power to mayor—Increase of debt—Rate of interest.*

Where ordinances have been passed expressing the purposes to which a loan is to be applied, it is not a delegation of discretion to the mayor for counsels to empower him to borrow the entire sum authorized, without any further specific ordinance providing for the expenditures of the money.

It is not an improper delegation of power to a mayor to empower him to sell the evidences of a city's indebtedness at a fixed rate of interest for not less than par to the highest bidder.

Where an ordinance provides that " Interest on the said loan, at a rate not exceeding 3½ per centum per annum, shall be paid by the city," and that the mayor " is hereby authorized to borrow in such proportions as in his judgment the best interests of the city demand from the highest bidder or bidders, at not less than par," the evident meaning is that the rate of interest is fixed by the ordinance at three and one half per cent per annum, unless the proper corporate authorities should subsequently determine upon a less rate.

*Municipal corporations—Ordinances not containing more than one subject.*

An ordinance empowering the mayor of a city to borrow all or any part of a sum of money, and further empowering him to borrow the same from the highest bidder at a fixed rate of interest, is not invalid as containing more than one subject.

*Municipal corporation—Increase of debt—Levying tax for payment of debt.*

An ordinance providing for a municipal loan, which levies a tax of seven tenths of a mill to repay the loan, will not be declared invalid on a bill in equity where the answer filed by the city averred that the levy will be sufficient to pay the loan within thirty years, and it is not alleged or shown that those charged with the duty of fixing the levy had not in good faith endeavored to fix a proper rate, or that the tax rate fixed might not be reasonably expected to produce sufficient funds with which to meet the principal and interest of the debt within thirty years.

Argued March 22, 1899.   Appeal, No. 3, Jan. T., 1899, by plaintiff, from decree of C. P. No. 2, Phila. Co., Sept. T., 1898, No. 558, on bill in equity.   Before STERRETT, C. J., McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Bill in equity for an injunction.

The facts appear by the opinion of PENNYPACKER, P. J., which was as follows:

By ordinance of councils of the city of Philadelphia, approved September 27, 1897, it was ordained " that the debt of the said city should be increased in the sum of $12,200,000 for the following purposes," specifying eighteen purposes and the amounts needed for each, and " that for the purpose of obtaining the assent of the electors to the increase of indebtedness . . . . an election shall be held in pursuance of the act of June 9, 1891, . . . . on the Tuesday next following the first Monday of November, 1897 ; that notice of said election shall be given by weekly advertisement in three newspapers of the said city at least thirty days prior to the general election, and said notice shall contain a statement of the last assessed valuation of the taxable property in the said city, amount of the existing debt, amount and percentage of the proposed increase, and the purposes for which the indebtedness is to be increased."   On November 2, 1897, the day of the general election, there were a majority of votes cast in favor of " the general proposition to increase

the indebtedness of the city in the sum of $12,200,000." On
June 7, 1898, by ordinance then approved, councils directed
" that the mayor of the city of Philadelphia be and he is hereby
authorized to borrow in such proportions as in his judgment
the best interests of the city demand, from the highest bidder
or bidders, at not less than par, on the faith and credit of the
city of Philadelphia, a sum or sums which in the aggregate
shall not exceed $11,200,000, for the following purposes," spec-
ifying the same purposes and amounts as those of the ordinance
of September 27, 1897, except an omitted item of " $1,000,000
for improvement to gas works." The ordinance further directed
that " interest on the said loan at a rate not exceeding $3\frac{1}{2}$ per
centum per annum, shall be paid by the city of Philadelphia
half yearly on the first day of the months of January and July,
at the office of the fiscal agency of the city of Philadelphia."

The complainants are citizens and taxpayers. They aver in
their bill that the mayor and city controller are about to bor-
row money on the faith and credit of the city, in reliance upon
the authority of these ordinances, and ask for an injunction re-
straining the defendants from borrowing the said sum or any
part thereof. Several grounds are alleged by them by reason
of which they contend that the election and the ordinances are
invalid. In the first place, they contend that " the said election
was not lawfully held, because there was no separate vote upon
the several propositions for the increase of indebtedness of the
city contained in said ordinance of September 27, 1897, but the
electors were compelled by the manner of holding the election
either to vote in favor of the whole group of propositions sub-
mitted to the people by the said ordinance or to vote against
all of said propositions." No ballots or ballot boxes were pro-
vided at the election to enable the voters to vote separately
upon each item for which it was proposed to increase the debt,
but the ballots were indorsed on the outside " Increase the debt,"
and on the inside there were printed the words " No increase
of debt " and " Debt may be increased," respectively, the entire
amount of the increase, to wit: $12,200,000, and the purposes.
The question then arises whether it is enough if the voters
shall vote for the increase of the debt, knowing the objects to
which the money is to be applied, or whether it is necessary
that the voters shall vote for or against each and every one of

the items set apart for the particular purposes sought to be accomplished and together making up the whole increase. Section 8 of article 9 of the constitution provides that the debt of a city shall not exceed seven per centum of the assessed value of the taxable property, and that no municipality shall "incur any new debt or increase its indebtedness to an amount exceeding two per centum upon such assessed valuation of property without the assent of the electors thereof at a public election, in such manner as shall be provided by law." The Act of June 9, 1891, P. L. 252, sec. 3, provides that the indebtedness of a city may be increased to an amount exceeding two per centum and not exceeding seven per centum upon the last preceding assessed valuation of the taxable property, "with the assent to the electors thereof duly obtained at a public election" on a day fixed "for the purpose of obtaining the assent of the electors thereof to such increase of indebtedness. Said notice (the notice prescribed by the act) shall contain a statement of the amount of the last assessed valuation, of the amount of the existing debt, of the amount and percentage of the proposed increase, and for the purposes for which the indebtedness is to be increased. Such election shall be held at the place, time and under the same regulations as provided by law for the holding of municipal elections, and it shall be the duty of the inspectors and judges of such elections to receive tickets, either written or printed, from electors . . . . labeled on the outside 'Increase the debt,' and containing on the inside the words 'No increase of debt,' or 'Debt may be increased,' also briefly the purpose and amount of increase, and to deposit said tickets in a box provided for that purpose."

It is reasonably clear from the language, both of the constitution and of the act of 1891, that it was not the intention that the electors should determine the purposes to which the moneys are to be applied. The electors are to be given notice of the purposes to which the corporate authorities intend to apply them. If it were the intention of the legislature to have the electors determine the purpose, there would have been a direction not to describe it briefly in their ballots, but clearly, precisely and exactly. The assent of the electors is to be given " to such increase of indebtedness," and nowhere is it indicated that they are to assent to or dissent from the purpose or pur-

poses for which the moneys are to be utilized. The ballots are so worded that the electors vote for an increase or no increase of the debt, and the brief description of the purpose is intended for their information, so that they may vote upon this question intelligently. The purposes are nearly upon the same plane, with the amount of the last assessed valuation and the amount of the existing debt, of which the electors are to have notice because it is important information for them in determining whether or not it would be well to increase the debt. If the electors were called upon to decide upon the merits of the different objects for which the corporate authorities purposed to use the moneys, there would be room for the contention that "several propositions" were submitted at the same time, but there is only the one object presented to them, to wit: the increase of the debt. It has been held, where a municipality has legislative authority to aid railroads by a subscription to the stock, upon first securing the assent of the electors, that to submit the question of aiding two or more railroads at the same time would lead to log rolling and be invalid: McMillan v. Boyles, 3 Iowa, 320; Supervisors v. Railroad Co., 21 Ill. 338; Williams v. People, 132 Ill. 574.

These cases are decided upon the ground that the aiding of each railroad is a separate and distinct proposition. The same reasons were given in Gray v. Mount, 45 Iowa, 591, where the question submitted was the appropriation of moneys from the sale of swamp lands to the erection of a courthouse at Guthrie Center and a county high school in Panora, and the people voted not only for the appropriation, but for the objects, which the court held to be the "essence of the proposition." In McBryde v. City of Montesano, 7 Wash. 69, the court held that the blending in one submission of a proposition to borrow money to fund old debts and another to borrow money for future indebtedness was illegal. But in that case, where the purposes of the future debt were to secure $1,500 for a fire apparatus and $3,500 for the erection of a city hall and jail, the court treated these two items as constituting but a single proposition. That case was followed in our own state in Bloomsburg Town Election, 4 Dist. Rep. 671, where it was held illegal to blend the submission of the question of increasing the debt under our statutes for the purpose of funding an old debt and the further

purpose of creating a new one. The court was much influenced by the view it held that the funding of an old debt is not within the terms of the act of 1874 and of the act of 1891. In Millvale Borough, 162 Pa. 374, the question of increasing the borough indebtedness was submitted to the electors, and the purposes were stated to be the public improvement of the streets and the erection or purchase of waterworks and electric light plant. Here were two different objects to which the moneys were to be applied. The Supreme Court, in reviewing the case upon appeal, condemned certain conduct of the corporate authorities with respect to the loan, and expressed regret " that we can discover no way of arresting such proceedings." We think, therefore, both upon principle and authority, that this contention of the complainants cannot be sustained.

The Act of June 9, 1891, P. L. 254, sec. 3, provides that " whenever the corporate authorities of any . . . . city . . . . by their ordinance or vote, shall have signified a desire to make such an increase of indebtedness, they shall give notice," etc. It is contended by the complainants that since the legislature has used a word, " desire," which indicates a personal emotion, it was the intention that only those individuals who constituted the corporate authorities at the time the desire was signified should be permitted to make the increase in the debt. Such a construction would lead to insurmountable practical difficulties. The death of a single member of councils—an event in so large a body always likely to occur—would render the whole proceeding, with its attendant labor and expense, abortive. It is inconceivable that the legislature, if they had entertained such a purpose, would not have expressed it in unmistakable phraseology. If an unusual and unnecessary delay had intervened between the submission of the question to the electors and the proceeding to secure the loan, there might, perhaps, be ground for intervention. The Act of May 11, 1897, P. L. 53, sec. 4, provides, " Whenever, by the returns of such election, it shall appear that there is a majority voting for ' No increase of debt,' such increase shall not be made, nor shall any other election on the same subject be held in that municipality for one year from the date of such preceding election." While this language provides only for elections, it indicates a thought in the legislative mind as to a period of time. The ordinance now under con-

sideration was passed within a year from the date of the election. We think that the corporate authorities named in the act of June 9, 1891, are those in whom, for the time being, the municipal authority is vested, having reference to their function and not to their personality.

It is further urged by the complainants that the ordinance of June 17, 1898, "wrongfully attempts to empower the mayor of said city, in his discretion, to borrow at once the entire sum of $11,200,000, or any proportional part thereof, without reference to the needs of the city or to any action of councils calling for its use for any of the purposes designated in said ordinance and notice. The ground for this contention is that, before the money is raised and the debt is increased, there ought to be specific provision by ordinance for the expenditure of the moneys for the purposes designated in the submission. But every work, public or otherwise, must begin somewhere, either at one end or the other, or at some intermediate point. It might be argued with some appearance of propriety, that it would be idle to pass an ordinance for the purchase of a site for a library when the only means of raising money for the purpose is to borrow, and it is still uncertain whether any one is willing to lend. Both the ordinance of September 27, 1897, and the ordinance of June 17, 1898, express the purposes to which the moneys are to be applied after they have been secured. If the city should be fortunate enough to find persons willing to lend, and the moneys thereafter should not be applied to the designated purposes, the complainants could then come into court, setting forth the facts and present their complaint. Upon the facts now before us, each step seems to have been an advance toward the end originally intended and kept in view from the initial movement. In the Millvale Borough case, supra, this question was raised. The complainants there averred "that no resolution or ordinance was ever passed authorizing the construction of said works," but the court refused to restrain the issue of the bonds for the loan.

It is further urged for the complainants that the ordinance of June 17, 1898, "unlawfully attempts to delegate to the mayor of said city the power of fixing the rate of interest to be paid upon the loan therein provided for, which power your orators aver to be a legislative power and not capable of being

delegated." This contention appears to be based upon an imperfect reading of the language of the ordinance. The ordinance provides: "Interest on the said loan, at a rate not exceeding $3\frac{1}{2}$ per centum per annum, shall be paid by the city," and that the mayor "is hereby authorized to borrow in such proportions as in his judgment the best interests of the city demand from the highest bidder or bidders, at not less than par, . . . . a sum or sums which in the aggregate shall not exceed $11,200,000." If the ordinance is to be declared invalid because of improperly delegated power, it ought to be clearly shown that such power has been delegated. The ordinance, however, says nothing whatever about giving the mayor power to fix any rate of interest. He is to borrow the money upon certificates of loan, at the rate of interest determined upon, from the highest bidder or bidders. This scheme, which seems to be practically wise, saves to the city the benefit of the possible lower market rate of interest by requiring him to accept the highest bidder at the rate fixed. The ordinance ought to receive a reasonable interpretation. The evident meaning is that the rate of interest is fixed by the ordinance at three and one half per cent per annum, unless the proper corporate authorities should subsequently determine upon a less rate. The inference that the mayor is to so determine is a mere assumption without any support in the words used. We also think that since the ordinance has for its object only the securing of a loan, it is not invalid upon the ground that it contains more than one subject.

The final objection is, that the ordinance and its amendment provide that "the tax to be collected by virtue of its provisions shall be seven-tenths of a mill upon the dollar, whereas a tax at that rate will not comply with the requirements of law as to the amount necessary to be annually levied and collected." The Act of May 11, 1897, P. L. 53, sec. 4, provides that the corporate authorities "shall before issuing any obligations therefor assess and levy an annual tax, the collection whereof shall commence the first year after the said increase, which tax shall be equal to, and sufficient for, and applied exclusively to the payment of the interest and principal of such debt within a period not exceeding thirty years from the date of such increase; and the moneys arising from such tax shall be applied at such

periods as the municipality may stipulate in such obligations to the redemption at par of the said outstanding obligations according to their terms." It is perhaps enough to say, with respect to this contention that it is definitely averred in the answer " that the tax levy of seven-tenths of a mill, as provided by the amendment of November 2, 1898, will be fully sufficient to provide for the interest and principal of the said loan within thirty years, as required by law," and that under the rule in hearings upon bill and answer, as well as under the special agreement in this case, the averments of the answer must be taken as true. Calculations are excepted from the agreement, but this is not a mere matter of calculation. If we may go beyond this question of the state of the pleadings, we shall be required to ascertain what was intended by the use in the act of the words " which tax shall be equal to, sufficient for, and applied exclusively to the payment of the interest and principal." If construed strictly, the effect of the word " equal " would be that the amount to be raised by the tax should be exactly the same as, and no more and no less than the amount of the principal and interest of the debt, and if the moneys so raised are to be applied exclusively to such payment, then any possible surplus could be used for no other purpose. The difficulty of working out so exact a problem relating to the complicated affairs of a vast municipality, and extending over a period of thirty years, is tremendous. An increase in values of property may make the sum too much, a depression may make it too little. An impecunious taxpayer who fails to make returns, or a defaulting tax collector, upsets it entirely. The use of the words "sufficient for " suggests a different thought, implies that a discretion is to be exercised to determine what will be sufficient, and gives the clue with which to reach the real meaning. The corporate authorities having before them the assessed values of properties within the municipality, and with a knowledge of what sum will be needed within thirty years to meet the interest and principal of the proposed increase of debt, are reasonably and fairly to determine what tax rate will be sufficient to meet the demands. Any failure to exercise such discretion or any abuse of it would no doubt call for the interference of the courts, but so long as no such neglect or wrong is alleged, it is a matter for the municipal authorities to deal with alone. There is no al-

legation in this bill that those charged with the duty have not in good faith endeavored to reach a correct solution of the problem, or even that the tax rate fixed may not be reasonably expected to produce sufficient funds with which to meet the principal and interest of the debt as required.

The able argument of counsel and the full presentation of authorities have been of great assistance to the court.

The bill is dismissed at the cost of complainants.

*Error assigned* was the decree dismissing the bill.

*Alex. Simpson, Jr.*, for appellants.—It will be noticed that section 3, when it provides for notice of the election, etc., provides for stating the "purposes for which the indebtedness is to be increased," thereby showing that at the same election more than one purpose may be voted for. But when it refers to the voting itself, the individual ballot to be cast shall state "briefly the purpose and amount of increase" for which the elector votes. A fair inference from this is that the elector is to vote separately upon each purpose of increase, so that there may be a fair test of the voter's willingness to make such increase upon its merits: Bloomsburg Town Election, 4 Dist. Rep. 671; McMillan v. Boyles, 3 Iowa, 320; Gray v. Mount, 45 Iowa, 591; Supervisors v. R. R. Co., 21 Ill. 338; Williams v. People, 132 Ill. 574; McBryde v. City of Montesano, 7 Wash. 69; Truelsen v. Duluth, 63 N. W. Rep. 714.

The view here expressed is borne out by another consideration. By section 3 of the Act of May 23, 1874, P. L. 230, Pepper & Lewis's Digest, 558, pl. 4, in prescribing the requirements for the passage of ordinances, it is said that no bill shall be passed containing more than one subject, which shall be clearly expressed in its title. The constitutional requirement as to acts of assembly is extended to ordinances of councils, and it may well be supposed that the act of April 20, 1874, relating to increase of debt, if it can be held to allow dissimilar subjects to be embodied in one submission, is modified by the clause of the later act above set forth: White v. City of Meadville, 177 Pa. 643; McMillan v. Boyles, 3 Iowa, 320.

The corporate authorities to whose desire to increase the debt the people favorably responded, having determined not to

increase it, later corporate authorities cannot be allowed to make the increase: White v. City of Meadville, 177 Pa. 643; Com. v. Butler, 99 Pa. 542.

It is not to be lost sight of that if the loan were made, though every dollar of it were in the treasury unexpended, not one dollar of it could be considered in determining the net amount of the debt should a new increase be required: Brooke v. Philadelphia, 162 Pa. 130.

Authorities bearing directly upon the point are apparently impossible to find, probably because no one has ever doubted that if money is authorized to be borrowed by a municipality for a particular purpose, and that only, the purpose for which it is to be used must legally exist before the loan can be made: State v. Hauser, 63 Ind. 155; Rushville Gas Co. v. City of Rushville, 121 Ind. 206; Bennett v. Borough of Birmingham, 31 Pa. 15; Wandsworth Board of Works v. United Telephone Co., L. R. 13 Q. B. Div. 904; Indiana, etc., Ry. Co. v. City of Attica, 56 Ind. 476.

It is not proper to authorize the mayor to fix the rate of interest: Simonton on Municipal Bonds, secs. 87 and 89.

Upon the point that municipal corporations cannot delegate their legislative power, or any power involving the exercise of discretion, in the absence of express statutory authority therefor, see Blair v. City of Waco, 75 Fed. Rep. 800, State v. Hauser, 63 Ind. 155, State ex rel. Lambert v. City of Rahway, 58 N. J. Law, 578, State v. City of Trenton, 51 N. J. Law, 498, Phelps v. Mayor, etc., of N. Y., 112 N. Y. 216, Davis v. Read, 65 N. Y. 566, Ampt v. Cincinnati, 3 Ohio N. P. 184, City of Chicago v. Stratton, 58 Ill. App. 539, McCrowell v. City of Bristol, 89 Va. 652, Mullarky v. Cedar Falls, 19 Iowa, 21, Lord v. City of Oconto, 47 Wis. 386 and Mazet v. Pittsburg, 137 Pa. 548.

The ordinance of June 17, 1898, contains more than one subject: Evans v. Willistown Twp., 168 Pa. 578; Harris v. People, 59 N. Y. 599; Buckalew on the Constitution, 68; Cooley's Constitutional Limitations (5th ed.), 171; McMillan v. Boyles, 3 Iowa, 320.

The tax provided for does not raise a sufficient sum annually to comply with the law.

The failure to provide for the collection of a tax required by

statute is fatal to the power of a municipality to contract the debt: Bruce v. Pittsburg, 166 Pa. 152; Rainsburg Borough v. Fyan, 127 Pa. 74; John Hancock Mut. Life Ins. Co. v. City of Huron, 80 Fed. Rep. 652; Quaker City Nat. Bank v. Nolan County, 59 Fed. Rep. 660; Citizens' Bank v. City of Terrell, 78 Texas, 450.

*James Alcorn,* assistant city solicitor, with him *Ernest Lowengrund,* and *John L. Kinsey,* city solicitor, for appellees.—The election was lawfully held; and the ordinance of June 17, 1898, contains but one subject: Howard's App., 162 Pa. 374.

The electors did not vote on the purposes for which the increase was to be used, but only as to the increase itself. To have remitted the former question to a popular vote would have been an unlawful delegation of legislative power and responsibility: Parker v. Com., 6 Pa. 507; Com. v. Painter, 10 Pa. 214; Com. v. Judges of Q. S., 8 Pa. 391; Moers v. City of Reading, 21 Pa. 188; Smith v. McCarthy, 56 Pa. 359; Locke's App., 72 Pa. 491; McBryde v. City of Montesano, 34 Pac. Rep. 559; Fulton County v. R. R. Co., 21 Ill. 338; Christian County Court v. Smith, 12 S. W. Rep. (Ky.) 134; Truelsen v. Mayor of Duluth, 63 N. W. Rep. 714.

The power to make the loan was conferred upon the corporate authorities generally and not as individuals.

A municipal legislative assembly, of which a portion of the members remain in office after the election of another portion thereto, is a continuous body: McGraw v. Whitson, 69 Iowa, 348.

No undue delegation of power has been attempted: Smalley v. Yates, 26 Am. & Eng. Corp. Cases, 578.

A sufficient tax is levied to comply with all legal requirements.

It is the settled rule of court wherever they can do so, to sustain rather than defeat measures taken at the direct instigation or with the sanction of the majority of the people: Simonton on Municipal Bonds, 71; Ackerman v. Hænck, 147 Ill. 514; Lehlbach v. Haynes, 23 Atl. Rep. 422; U. S. v. Memphis, 97 U. S. 284; Cooley on Constitutional Limitations, 618.

PER CURIAM, May 15, 1899:

The controlling facts of this case and the law arising thereon

are sufficiently stated in the opinion of the learned court below and need not be repeated here.

Notwithstanding the very able and ingenious argument of the learned counsel for appellants, our consideration of the record and arguments of counsel, on both sides, has satisfied us that there is no error in the proceedings, leading up to and including the final decree, that would justify a reversal or modification thereof. The questions involved have been so ably and exhaustively considered and correctly decided by the learned court below that nothing we could add would better vindicate the correctness of its decree.

We are all clearly of the opinion that, for reasons given by said court, the decree from which this appeal was taken should not be disturbed.

The decree is therefore affirmed on the opinion of the learned president of the common pleas, and the appeal is dismissed at appellants' costs.