# Louisville Trust Co. v. Commissioners of Sinking Fund of City of Louisville.

(Decided June 21, 1935.)

220

RICHARD PRIEST DIETZMAN and GORDON, LAURENT & OGDEN for appellant.

MARK BEAUCHAMP and WILLIAM MIX for appellees.

Opinion of the Court by Judge Thomas—Reversing.

Section 3010-1 to and including section 3010-19 compose parts of the charter of cities of the first class in this commonwealth. They create and prescribe for a sinking fund for cities of that class, to be applied on its bonded indebtedness as it matures, and for the meeting of interest installments due thereon. They provide for an administrative agency called "Commissioners of the Sinking Fund of the City of Louisville," and which will hereinafter be referred to as "commissioners." Their duties are outlined in the statutes referred to, including what they may do with a temporarily idle fund which may not be immediately needed for the purpose for which it was created, including (a) its investment, but if not so invested then (b) its deposit in financial institutions located within the city. Duty (a) is prescribed in section 3010-9, and it is in

these words: "The funds, estate and income belonging now or hereafter to said fund shall be and is vested in and be under the control and management of the board of commissioners for the purposes herein declared; and if injured, withheld or abstracted, said board of commissioners may sue for and recover the same or any part thereof in their corporate name. The said commissioners shall apply said fund to the payment of the city's debts chargeable on the same, when they can do so on fair terms; but whenever there shall be a surplus of said fund, which cannot be applied on fair terms to the extinguishment of said liabilities, the said commissioners may invest the same in bonds of said city, or for which it is bound, or bonds of the state of Kentucky, or in United States bonds."

Duty (b) is prescribed in section 3010-12, and it is in these words: "The commissioners of the sinking fund shall deposit the funds in their hands as commissioners in some incorporated bank, state or national, located or doing business in said city. The bank selected by the commissioners aforesaid shall give bond with good and sufficient security to secure the said commissioners the payment of all moneys and other things of value deposited by them with such bank; and upon such bond recovery may be had for any breach of the conditions thereof by suit in any court of competent jurisdiction. The moneys or other things of value belonging to the sinking fund, or which may be placed to the credit of the commissioners of the sinking fund, can only be withdrawn upon the order of the treasurer and secretary, approved and certified by the president of the commissioners of the sinking fund."

The commissioners are incorporated by the statute with the usual powers and incidents of corporations, including the right to contract and be contracted with, and to sue and be sued. On March 30, 1935, they had on hand as a part of the city's sinking fund the sum of $1,000,000, which could not be applied to the payment of the city's nondue indebtedness, "on fair terms" because of the high premium on its unmatured bonds, and it became and was necessary to either invest it for the time being, which is provided for in section 3010-9, supra, of our Statutes; or to deposit it pursuant to the provisions of section 3010-12, supra, of the Statutes. It could not be invested in bonds of the "state of Ken-

tucky'' because there are no such bonds. The high premium on the unmatured city bonds was such as to create the possibility of loss if the fund was invested in them, and United States bonds bore a small rate of interest and the market value of which, though now at a premium, constantly fluctuates, so that a possible loss, after paying the premium, might be incurred by the time the idle surplus fund in the hands of the commissioners would be needed, and at which time the investment, whatever it may be, would have to be disposed of; for all of which reasons the commissioners saw proper not to make the investment in the securities expressly mentioned in section 3010-9, supra. '

The commissioners then entered into a tentative agreement with appellant, Louisville Trust Company, the substance of which was: That they would deposit the $1,000,000 fund with that company on a time deposit bearing 2½ per cent. interest from that date, the principal to be paid $200,000 subject to check and payable 22 months thereafter, and like sums payable 24 months, 26 months, 28 months, and 30 months thereafter. To secure the payment of the entire deposit, plaintiff, trust company, agreed to deposit in a safety box to be kept in its vaults under the joint control of it and the commissioners, United States bonds in the aggregate sum of $250,000, which the commissioners might appropriate to the payment of any due and unpaid installment of the entire deposit that might not be met by the depository upon its due date and demand therefor, and to the extent of the depletion of the $250,000 security the depository should replenish it with like securities.

Before that agreement was carried into execution, this declaratory judgment action was filed by plaintiff against the commissioners in the Jefferson circuit court for a declaration of rights, and which involves only the authority of the commissioners to enter into such an arrangement under the facts meticulously set out in the petition, some of which were the future dates when the entire deposit, or portions of it, will be required to meet maturing indebtedness of the city and for which the tentative deposit contract considered and provided for. The petition discloses facts that would in all probability create loss of the 2½ per cent. interest to be paid by plaintiff under the tentative agreement, unless it was carried out. Counsel for the commissioners, the defend-

ant in the action, filed a demurrer to the petition which the court sustained, and upon plaintiff declining to plead further, it was dismissed, to reverse which plaintiff prosecutes this appeal.

But two questions are involved, and they are: (1) Whether or not the tentative contract or arrangement referred to is an investment of the fund, or a deposit of it? and (2) if it should be held to be a deposit, such as is comprehended by section 3010-12, then whether or not the commissioners, should require plaintiff as the depository to secure the entire deposit by a 100 per cent. coverage, i. e., by the execution of a bond, or the giving of other acceptable security, of the solvent value of $1,000,000? We will endeavor to answer them in the order named.

1. With reference to question (1), it is contended by counsel for defendant that a time deposit constitutes a loan, and, therefore, an investment of the amount lent, and that the transaction by which a time deposit is made strips it of the elements of an ordinary deposit which latter, counsel insist, is the only one referred to and dealt with in section 3010-12, supra. From such premise they also argue that the only investments mentioned in section 3010-9 that may be made by the commissioners are in bonds of the city, bonds of the state of Kentucky and United States bonds, and which they insist constitute mandatory limitations, i. e., that the commissioners are forbidden by that section to invest the surplus fund in their hands in any other securities than the ones mentioned. We are very doubtful as to the correctness of that contention, since the term "may" is not a mandatory one, but implies discretion and judgment in the one upon whom the authority to act is conferred, and which seems to indicate that the recitation contained in section 3010-9, as to the investments therein specifically named, is directory only and not mandatory. But, in view of our conclusions with reference to question (2), supra, it becomes unnecessary to determine the proper answer to question (1).

2. To begin with, section 584 of our Statutes, which is a part of our legislation relating to banks and banking, very clearly indicates that ordinary demand deposits and time deposits are similarly regarded and it prescribes for certain reserve funds to be kept by the

depository for the benefit of both classes of deposits. But if time deposits should be regarded as a loan to the bank, then the reserve fund provided for by that section of our statutes would not be available to the lender who in that case would be the time depositor. The cases cited and relied on by counsel for the commissioners in substantiation of their contention that the transaction involved here was a lending of the sinking funds surplus do not indicate anywhere in them the existence of any such local statute. Those cases are City of Aberdeen v. National Surety Co., by the Supreme Court of the State of Washington, and reported in 151 Wash. 55, 275 P. 62, 65 A. L. R. 794, City of Pocatello v. Fargo, 41 Idaho, 432, 242 P. 297, and State v. Larson, 48 N. D. 1144, 189 N. W. 626. The annotation to the City of Aberdeen Case in 65 A. L. R., beginning on page 798, points out that the overwhelming weight of authority is to the effect that a time deposit is not a loan, but is only a deposit of the fund with the depository, accompanied with an agreement that it shall not be demanded or checked out until a fixed period during which time an agreed upon rate of interest will be charged and paid by the depository. In both cases the depositor is the creditor and the bank is the debtor. Some of the cases so holding, when the question was directly presented for determination, are McCormick v. Hopkins, 287 Ill. 66, 122 N. E. 151; National Surety Co. v. McCormick, 268 F. 185 (a U. S. Circuit Court of Appeals opinion), and our reading of the City of Pocatello Case, supra, convinces us that it announces the same doctrine and does not support the contrary proposition for which defendant's counsel cite it.

Moreover, we take judicial knowledge of the fact that in common parlance, and in all commercial transactions with banks and banking institutions, the word "deposit" refers to and embraces sums of money put into institutions, to become available for the purposes of the depositor as agreed upon when the deposit is made. Generally and usually it is whensoever the depositor demands it, or any portion of it, by drawing an order or check upon the depository against the fund deposited; but the transaction frequently embodies an agreement that the deposited fund shall remain on deposit for a specified time, during which the depositor

receives interest at a stipulated rate. In other words, that a deposit, as so understood, embraces both demand and time deposits.

Statutes in other states make provision for the pro tanto or complete safety of deposits similar to our section 584, supra, and, so far as we are aware, they all include both time and demand deposits. We, therefore, conclude that the tentative agreement herein made when entered upon would create the relationship between commissioners and the Louisville Trust Company of depositor and depository, which is, as we have seen, that of creditor and debtor, and from which it results that no effort at investment is contemplated through and by such transaction so as to bring it within the purview of section 3010-9, supra, of the Statutes, even if its terms relating to the investment of the fund in question were mandatory.

The next proposition to be determined is: What is meant by the phrase "good and sufficient security" as contained in section 3010-12, supra? As we have seen, it is contended by counsel for the commissioners that the phrase contemplates security of the actual value of the entire deposit, or a 100 per cent. coverage; whilst counsel for plaintiff with equal vigor argue that the phrase contemplates only a security in an amount to accomplish the end and purpose in taking it, and that such purpose is when the amount of the security demanded and given, plus reasonably anticipated liquidating dividends in case of liquidation of the depository, makes it reasonably certain that the collection of the amount deposited when it becomes due and payable will be forthcoming. The sources that may be looked to in fixing the amount of the security embraces the amount and solvency of the assets of the depository, its indebtedness, the business-like method by which it is operated, and other material facts. In other words, counsel for plaintiff take the position that the commissioners, in exacting and demanding security for the deposit of the nature of the one here involved, are vested with a sound discretion to be regulated and exercised in the light of the facts that we have enumerated, and that the language under consideration does not exact or require of them the taking of security for the deposit of 100 per cent. coverage. Our conclusion is that such position is the correct one. The cases relied on by coun-

sel for the commissioners are collected in a long annotation to the case of Jordon v. Baker, reported on page 813, 93 A. L. R., and which is a domestic case reported in 252 Ky. 40, 66 S. W. (2d) 84; the annotation in A. L. R. beginning on page 819. But the statutes within the jurisdictions where such cases were determined expressly or by necessary implication requires the taking of a bond of 100 per cent. coverage, and which fact renders them wholly inapplicable here, since our statute makes no such express or necessarily implied requirement.

The descriptive words of the security that is required are "good" and "sufficient." The one applies to the quality of the security of whatever amount that may be taken, and the other applies to the quantity of security. It is not pretended in this case that the proposed security of $250,000 of United States bonds is not "good," and we are not, therefore, concerned with the quality of security proposed to be taken under the involved contract; the contention arises exclusively as to the sufficiency or quantity of security. To begin with, if the Legislature intended in the enactment of section 3010-12 to prescribe for a 100 per cent. coverage, it would have been an easy and simple matter to have said so in unmistakable terms. All that would have been required was the insertion of the phrase, following the word "security," "equal to the amount deposited," or "equal to the deposit," or some other short and direct expression that would have dissipated all questions of doubt. It did not do so, but employed general terms instead, and which, under the universal rule of interpretation of statutes, must receive their common and ordinary acceptation. Webster's dictionary, Bouvier's and Black's law dictionaries, text-writers, and courts all define the word "sufficient" to mean "adequate, enough, equal to the end proposed, and that which may be necessary to accomplish an object." The purpose in requiring any security is to create a situation that will enable the depositor (commissioners in this case) in the light of all reasonable probabilities, to regain the amount of the deposit if it should not be paid on request or demand when it becomes due, and whatever suffices for that purpose meets the requirements of the statute, since it is our conclusion that the word "sufficient" embraces no more than that which furnishes a plenitude

and which, when done, suffices to accomplish the purpose intended in the light of present conditions viewed through the eyes of practical and cautious men.

It is pointed out in the petition that no interest-bearing deposit could be made in any of the banking institutions of the city of Louisville if a 100 per cent. coverage was demanded, and in which event the city would thereby be deprived of the interest on such fund. Men who are competent to fill the position of membership on the commission should be and no doubt are fully competent to investigate the financial condition of any contemplated depository and to form a fair estimate of its business prospects. Rarely, indeed, does any such institution fail with a 100 per cent. loss to its depositors. There is most always some salvage, or dividend, forthcoming to the depositors, and when the estimated salvage based upon the foregoing recited facts, plus the demanded quantity of security, are together sufficient to reasonably assure a 100 per cent. recovery, then it is our conclusion that the security is both "good" and "sufficient" within the meaning of section 3010-12, supra. There is nothing shown to the contrary in this case. On the contrary, the petition avers such facts, and they are admitted by the demurrer filed to it.

Besides the cases collected in the annotation to the 93 A. L. R. case, supra, we would cite Barr v. City of Philadelphia, 191 Pa. 438, 43 A. 335, 338. In that case there was involved the question of the "sufficiency" of a levied tax which the applicable law required should be large enough to meet a certain indebtedness due in the future, and the court in defining the meaning of the word said: "The use of the words 'sufficient for' suggests a different thought [and] implies that a discretion is to be exercised to determine what will be sufficient, and gives the clue with which to reach the real meaning." Compare, also, the cases of Massachusetts Breweries Co. v. Herman, 106 Me. 524, 76 A. 943, and Ownbey v. Morgan's Ex'rs, 7 Boyce (30 Del.) 297, 105 A. 838.

Supporting the above conclusion is the fact that section 3010-12 was enacted in 1902, and a similar section applying to the same subject had been in existence since 1867. Throughout that time, and continuing from 1902 to the present time, the sinking fund commissioners of the city of Louisville have construed the statute

so as to require only what was deemed to be a sufficient percentage security of the deposit to secure its eventual forthcoming when the time came to demand it. We are aware that contemporaneous construction has no place in the construction of plain and unambiguous language; but we assume that no one can successfully contend that the statute here involved (section 3010-12) is plain and unambiguous with reference to the matter under consideration. The long-continued contemporaneous construction of it, as is averred in the petition and admitted by the demurrer to be true, is a potent factor in determining what the statute contemplated with reference to the character and quantity of security that should be demanded. Of course, we think, as hereinbefore expressed, that such contemporaneous construction was and is the correct one; but were we less convinced of the correctness of our conclusion we would then be inclined to resolve the doubt in favor of the contemporaneous construction. Other points of attack made by counsel for the commissioners on the validity of the proposed agreement are but slightly pressed, and none of which we conclude are material. We, therefore, put them aside without further reference or comment.

For the reasons stated, the judgment is reversed, with directions to set it aside and to overrule the demurrer to the petition, and for other proceedings not inconsistent with this opinion. The whole court sitting.