# Schuldice, Appellant, *v.* Pittsburg.

*Municipalities—Equity—Injunction—Increase of indebtedness—Two per cent. limit—Refunding bonds—Assets in sinking fund.*

1. The entire indebtedness which may be created by a municipality under the constitution is limited to seven per centum of the assessed value of the taxable property, but acting within this general limitation, the municipal authorities may create new indebtedness, or increase old indebtedness thus created, not to exceed two per centum, without the assent of the electors. In computing the borrowing capacity of two per centum not requiring the assent of the electors all indebtedness existing prior to the adoption of the state constitution of 1874 should be excluded, and this exclusion applies to refunding bonds issued since that time to take the place of bonds outstanding when the constitution went into effect and also to both bonds and cash paid into municipal sinking funds for specific purposes under statutory authority.

*Equity — Injunction — Municipalities — Increase of indebtedness — Street improvements.*

2. A decree refusing to declare null and void city ordinances providing for the widening of certain streets will not be disturbed on appeal, where it appears that the pleadings on which the decree was based did not furnish sufficient data to warrant the granting of such relief.

Mr. Justice Mestrezat dissents.

Argued Oct. 18, 1911. Appeal, No. 111, Oct. T., 1911, by plaintiff, from decree of C. P. No. 2, Allegheny Co., Jan. T., 1911, No. 45, dismissing bill in equity in case of Charles A. Schuldice v. The City of Pittsburg, William A. Magee, Mayor, and Eustace S. Morrow, City Controller. Before Brown, Mestrezat, Potter, Elkin, Stewart and Moschzisker, JJ. Affirmed.

Taxpayer's bill to enjoin a city from negotiating a loan without the assent of the electors, and to have declared void ordinances providing for the widening of certain city streets.

From the bill and answer Frazer, P. J., found the following facts:

1. Plaintiff is a resident and taxpayer of the city of Pittsburg.

2. The city of Pittsburg is a city of the second class under the laws of this commonwealth. William A. Magee is the mayor, and Eustace S. Morrow is the city controller thereof.

3. The assessed value of the taxable property of the city of Pittsburg is $751,226,965, and the amount of the indebtedness of the city created and incurred without the express assent of the electors as provided by law, is $19,664,641.05.

4. By an ordinance duly passed by the select and common councils of the city and approved by the mayor, the proper officers of the city are authorized and directed to issue and sell bonds of the city, amounting in the aggregate to $81,000, for the purpose of providing funds to purchase water mains belonging to the Monongahela Water Company, and now laid in that portion of the city which was formerly known as the boroughs of Esplen and Elliott, and also for the purchase of water to be supplied to consumers in territory annexed to the city, now supplied by the South Pittsburg Water Company.

5. By ordinances of the city of Pittsburg, duly passed by select and common councils and approved by the mayor the widening of Diamond street from Smithfield street to Gala alley, of Oliver avenue from Smithfield street to Grant street, and of Cherry way from Fifth avenue to Sixth avenue, was authorized, each of the ordinances authorizing the improvement of these highways providing "that the costs, damages and expenses occasioned thereby, and the damages caused by the change of grade of said public highways be assessed against and collected from the properties specially benefited thereby."

6. The highways referred to in the previous paragraph are located in the business center of the downtown district of the city of Pittsburg, where the value of real estate is greater than in any other locality of the city.

7. The damage to property abutting on these highways, resulting from land taken and change of grade, is estimated at $2,216,000 in the bill. To what extent that sum will be

offset by benefits collected by the city is problematical. The defendants, however, in their answer aver that the ultimate liability of the city will not exceed the sum of $951,000 on account of the proposed improvements.

8. Included in the indebtedness of the city of Pittsburg of $19,664,641.05, as found in the third finding of facts, are the following items:

(a) The sum of $382,977.07, being the preliminary estimate of the cost of grading, paving and curbing certain public highways and constructing certain public sewers. For the purpose of completing those improvements contracts have been let. The work, however, is not finished and final estimates have not been made. The ordinances under which these improvements are being made provide that the cost and expenses of the same shall be paid and collected from property benefited thereby.

(b) The sum of $2,183,201.87, being the amount of a legal indebtedness of the city, evidenced by certain bonds known as the "Railroad Compromise Bonds." The indebtedness for which these bonds were issued was incurred, and the bonds issued, prior to the adoption of the present constitution.

(c) The sum of $121,000, evidenced by certain funded debt bonds, bearing date of January 1, 1872, and payable January 1, 1912, which indebtedness was incurred, and the bonds therefor issued, prior to the adoption of the present constitution.

(d) The sum of $5,214,700, evidenced by refunding bonds as follows:

Refunding bonds, dated June 1, 1882, maturing June 1, 1912,    .    .    .    . $   77,000
Refunding bonds, dated June 1, 1883, maturing June 1, 1913,    .    .    .    .  1,403,000
Refunding bonds, dated Dec. 1, 1885, maturing Dec. 1, 1915,    .    .    .    .  3,734,700

These refunding bonds were issued by the city without the consent of the electors, in pursuance of the provisions.

of an act of assembly entitled: "An Act authorizing cities of the second class to issue bonds to an amount equal to the street bonds and temporary loan bonds now outstanding, not exceeding $6,000,000, for the purpose of retiring or paying temporary loan bonds and street bonds," approved May 9, 1879, P. L. 49. Of these bonds $2,933,500 were issued for the purpose of extinguishing and paying off certain prior bonds issued by the city for work done under contracts made for street improvements previous to the adoption of the present constitution; and $2,281,200 were issued for the purpose of extinguishing and retiring certain prior bonds issued by the city after January 1, 1874, for the improvement of certain streets. The indebtedness for which these bonds were issued was created under the provisions of an act of the general assembly, entitled: "An Act to provide for the improvement of Penn Avenue, and other avenues and streets in the City of Pittsburg," approved April 2, 1870, P. L. 796. Of the bonds refunded $2,134,600 were actually issued prior to January 1, 1874, for streets improved prior to that date, and the remainder were issued for improvements made subsequent to that date or immediately preceding it. The indebtedness created by issuing bonds under the Penn avenue act, for improvements made both before and after January 1, 1874, was refunded by the refunding bonds bearing date June 1, 1882, June 1, 1883, and December 1, 1885, referred to above. The refunding bonds are all of like form and character, and the indebtedness created by the city under the provisions of the Penn avenue act, whether created before or after January 1, 1874, was refunded indiscriminately by the issues of the refunding bonds herein referred to, so that the identity of the original issues was obliterated.

(e) Bonds to the amount of $1,566,400 purchased by the sinking fund commission, under the provisions of the Act of March 7, 1901, P. L. 20, and now held by that commission, which bonds were issued by the city since January 1, 1874, without the consent of the electors.

(f) Defendants further contend that the following items

should be deducted from the aggregate indebtedness: (a) cash in the hands of the sinking fund commission for the redemption of bonds issued without the consent of the electors, amounting to $865,938.92; (b) the sum of $576,802.31, outstanding special assessments made against property benefited by municipal improvements. Of this latter sum $381,291.31 is due the city under special assessments, lawfully made and municipal liens already filed for the recovery of the same, but which still remain open and unpaid; and $195,511 consists of assessments lawfully made against properties benefited by improvements, which still remain open and unpaid, but where liens have not as yet been filed, the time in which the same are required by law to be filed not having expired. These assessments can be used for no other purpose than in the payment of the amounts due contractors for the improvements.

The court dismissed the bill.

*Error assigned* among others was the decree of the court.

*Guy D. Wallace,* for appellant.—"Indebtedness" is to be taken in its ordinary meaning, and as used in the constitution means what the municipality is bound to pay or perform and does not mean the difference between what the municipality is bound to pay and the value of any assets it may own, or any claim it may have against other parties: Lake County v. Rollins, 130 U. S. 662 (9 Sup. Ct. Repr. 651); Beard v. Hopkinsville, 95 Ky. 239, 44 Am. St. 222; Brooke v. Philadelphia, 162 Pa. 123; Davis v. Braddock Boro., 48 Pitts. Leg. J. 145; Bank for Savings et al. v. Grace et al., 102 N. Y. 313 (7 N. E. Repr. 162); Chicago v. McDonald, 176 Ill. 404 (52 N. E. Repr. 982).

*Lee C. Beatty,* with him *Charles A. O'Brien,* for appellees.—Bonds issued for the purpose of refunding an indebtedness incurred prior to January 1, 1874, are not to be considered a new debt, in ascertaining the constitu-

tional limit of two per cent: Hirt v. Erie, 200 Pa. 223; Com. v. Councils of Pittsburg, 88 Pa. 66; Houston v. Lancaster, 191 Pa. 143

The amount of bonds and cash in sinking fund was properly deducted: Brooke v. Philadelphia, 162 Pa. 123; Bruce v. Pittsburg, 166 Pa. 152; Elliott v. Philadelphia, 229 Pa. 215; Kronsbein v. Rochester, 76 N. Y. App. Div. 494 (78 N. Y. Supp. 813).

OPINION BY MR. JUSTICE ELKIN, January 2, 1912:

By this bill a taxpayer sought in the court below to enjoin the city of Pittsburg from negotiating a loan in the sum of $81,000, authorized by ordinance without the assent of the electors for certain specified municipal purposes. He also asked that three separate ordinances providing for the widening of certain streets and avenues be declared null and void, and that the appellees be restrained from taking any further steps to enforce the same. The ground upon which appellant asked the relief prayed for was that the city had already exceeded its borrowing capacity of two per centum as limited by the constitution without the assent of the electors. This raises a question of fact to be determined upon the basis of what the constitution requires. It therefore becomes more a question of law than of fact. The case was heard on bill and answer and the facts must be gathered from the pleadings. The bill avers that the existing indebtedness of the city created without the assent of the electors is $19,664,641.05, from which sum there should be deducted bonds in the sinking fund amounting to $3,816,338.14, leaving the net indebtedness thus incurred $15,848,302.91. It is conceded by both sides that the assessed value of the taxable property as determined by the last preceding assessed valuation thereof is $751,226,965, and that two per centum of the valuation thus ascertained is $15,024,539.30. The answer avers that the total indebtedness of the city incurred without the assent of the electors within the prohibition of the constitution is only $14,043,962.11, and that certain de-

ductions should be made from this amount in order to fix the net indebtedness. The most important question raised by this appeal is whether the total indebtedness claimed by appellant, or that claimed by the city, is the indebtedness upon which the constitutional limitation of two per centum should be based. It is proper to remark here that the total indebtedness of the city is much less than the seven per centum authorized by the constitution, and that no question arises in this case relating to the maximum limit of indebtedness which may be incurred with the consent of the electors. In the present case we have to do solely and alone with the question of the borrowing capacity of the city without the assent of the voters. Appellant contends that the entire indebtedness of the city created without the assent of the electors whether incurred before or since the adoption of the constitution, should be included. The city contends that all indebtedness existing prior to the adoption of the constitution should be excluded, and that this exclusion applies to refunding bonds issued since that time to take place of bonds outstanding when the constitution went into effect. If this were a new question, the argument of the learned counsel for appellant would have great force, but in the light of our own decisions it cannot be regarded as an open question. Section 8, art. 9, of the constitution has frequently been the subject of consideration by this court. In 1875 an interpretation was placed upon this section in Wheeler v. Phila., 77 Pa. 338, in which it was expressly stated that, "the municipal authorities may increase the debt from time to time until two per centum has been added, provided the original debt, with the increase, does not exceed seven per centum."

The thought emphasized in that case was that the entire indebtedness must be limited to seven per centum of the assessed value of the taxable property, but acting within this general limitation, the municipal authorities may create new indebtedness, or increase old indebtedness thus created, not to exceed two per centum, without the assent of the electors. This was followed by Com. v.

Councils of Pittsburg, 88 Pa. 66, in which Mr. Justice
Paxson speaking for this court said: "A further objection
was made to the bonds, that they were issued in violation
of art. IX, sec. 8, of the constitution, limiting the debt
of municipal corporations. It is a sufficient answer to this
to say, that the section of the constitution referred to
does not apply. It is prospective in its operation." In
that case the bonds were issued by municipal authority
for an indebtedness of the city created before the constitu-
tion went into effect, and it was held that this indebted-
ness should not be included in determining the borrowing
capacity of the city under the two per centum limit with-
out the assent of the electors. In Pike County v. Rowland,
94 Pa. 238, Mr. Justice Trunkey discussed at considerable
length this section of the constitution and among other
things, stated: "Where the debt is less than seven per
centum, it was not intended that public officers of munic-
ipalities should be deprived of power to make immediate
improvements and repairs of public property, which might
become necessary, provided they keep within the limit
of two per centum of the valuation." In the appeal of
the City of Wilkes-Barre, 109 Pa. 554, in passing upon
the exact question here presented, President Judge Rice,
then presiding in the court below, deducted from the total
outstanding indebtedness, all debts created and in exist-
ence at and before the time the constitution went into
effect. While other important questions incidental to
that controversy were considered and determined, the
decree including the findings of the learned court below
was affirmed here. In Millerstown Boro. v. Frederick,
114 Pa. 435, Mr. Justice Clark, in discussing this ques-
tion, said: "The municipality might, under sec. 8 of art. 9
of the constitution, incur a debt, or increase its exist-
ing debt to an amount not exceeding two per centum
upon the assessed valuation of the taxable property therein
(Wheeler v. Philadelphia, 77 Pa. 338) provided that the
whole indebtedness would not thereby exceed seven per
centum of that valuation." In other words, the municipal

authorities had the power to create a new debt, or to increase an old debt, to the extent of two per centum of the assessed value of the taxable property without the assent of voters, provided, the new debt, or the increase of the old debt, added to the already existing debt, did not in the aggregate exceed seven per centum of the assessed valuation. In Houston v. Lancaster, 191 Pa. 143, the question is again referred to by Mr. Justice DEAN who delivered the opinion in that case. It is true the main question there involved did not depend upon the time when the indebtedness was incurred, but the decision was put squarely upon the ground that the city had borrowed without the assent of voters more than two per centum of the assessed valuation since the constitution went into effect. In that case indebtedness created prior to the adoption of the constitution was not included in computing the two per centum limitation. As late as Hirt v. Erie, 200 Pa. 223, President Judge WALLING of the courts of Erie county, passed upon this precise question, following the decisions hereinbefore referred to, and held that an indebtedness incurred prior to January 1, 1874, is not to be considered a new debt, or an existing indebtedness to be computed in ascertaining the constitutional limit of two per centum beyond which the debt cannot be increased except by a vote of the people. Upon appeal this court sustained the finding of fact and conclusions of law and affirmed the decree entered by the court below. The rule announced in these cases is predicated upon the assumption that the constitution intended to confer upon municipal authorities the power to create new indebtedness after its adoption to the extent of two per centum of the assessed valuation without the assent of voters, provided the entire indebtedness including the increase does not exceed seven per centum. This question seems to be conclusively settled, and we think it is too late to undertake to disturb the rule so long established. The learned court below in the case at bar accepted the rule above stated as settled law and deducted from the averments of indebtedness set

out in the bill, all indebtedness created and in existence at the time the constitution went into effect. In reaching this conclusion he followed the rule of our own cases and committed no error in so doing.

This appeal raises another important question, and that is, whether bonds issued since the adoption of the constitution for the purpose of refunding an indebtedness created prior to that time, are to be considered as a new debt, or as an increase of an old debt, in ascertaining the constitutional limitation of two per centum upon the assessed valuation. This question was squarely ruled in Hirt v. Erie, supra, and in Com. v. Pittsburg, supra. To sustain the contention of appellant on this branch of his argument it would be necessary to overrule these cases, and we see nothing in this record to warrant such a conclusion.

It is also contended that bonds and cash in the various sinking funds should not be deducted in ascertaining the net indebtedness. As to bonds so held, the question of the right of the city to deduct has been settled by this court in two well-considered cases: Brooke v. Philadelphia, 162 Pa. 123; Bruce v. Pittsburg, 166 Pa. 152. We see no good reason why moneys paid into a sinking fund for a specific purpose under statutory authority, and which cannot be diverted to any other municipal purpose, should not be deducted in the same manner as bonds so held are allowed to be deducted. The funds referred to in the present case were set apart pursuant to statutory authority and are held for a specific designated purpose. They must be used for the purpose intended and cannot be diverted to general municipal purposes. The funds so held are available assets of the city, intact and ready to be applied in liquidation of outstanding liabilities, for the payment of which these funds are created. Why should they not be deducted? We think they should as did the court below.

Upon the question of declaring the ordinances set out in the bill null and void, and by reason thereof restraining the officers of the city from taking any further steps to enforce

the same, the learned court below sitting as a chancellor, concluded that the pleadings did not furnish sufficient data to warrant the granting of the relief prayed for. The city may withdraw the widening ordinances and at the present time there is no definite information as to what the improvements would cost or what the benefits might be. It is all problematical and at best could only be guess work. Under these circumstances we do not feel warranted in convicting the learned court below of error in refusing to declare the ordinances invalid.

We have thus indicated our views on the controlling questions raised by this appeal. We do not deem it necessary to discuss in detail each item of indebtedness, or of deduction, claimed in the present proceeding. The learned court below has given the case the most careful and intelligent consideration, and reached a conclusion fully justified under the facts and the law.

Decree affirmed at cost of appellant.

Mr. Justice Mestrezat dissents.