(No. 24098.—

THE PEOPLE *ex rel.* N. J. Johnson, County Collector, Appellee, *vs.* THE SOUTHERN RAILWAY COMPANY, Appellant.

*Opinion filed October 15, 1937—Rehearing denied Dec. 15, 1937.*

CREIGHTON & THOMAS, and KRAMER, CAMPBELL, COSTELLO & WIECHERT, (S. R. PRINCE, and W. T. JOYNER, of counsel,) for appellant.

CHARLES W. CREIGHTON, State's Attorney, (HOLLAND M. CASSIDY, of counsel,) for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

The 1935 tax levy of Wayne county for county purposes included seventeen cents for county bonds in addition to twenty-five cents for general purposes. Objections of the Southern Railway Company to the item for county bonds were overruled, judgment was rendered for the tax and for sale of its property, and the company prosecutes this appeal.

The validity of the taxes levied for county bonds is challenged on the ground that the proceedings for their issuance, and the levying of a tax to pay them, did not comply with the applicable statute. Section 1 of "An act to enable counties having a population of not more than 200,000 to issue funding bonds for the purpose of paying claims against the county," approved June 28, 1935, (Smith-Hurd Stat. 1935, p. 951; Laws of 1935, p. 679;) authorizes counties having a population not in excess of 200,000 to issue funding bonds until January 1, 1936, for the purpose of paying claims against the county incurred prior to July 1, 1935, which the county board shall find are for services rendered or materials furnished the county for corporate purposes. The second section, so far as pertinent, declares that any county desiring to issue bonds conformably to the provisions of the act shall adopt a resolution determining the indebtedness to be paid and declaring its intention to issue funding bonds to accomplish its purpose. Such resolution, it is prescribed, shall direct that a notice be published at least once in a newspaper having general circulation in the county, stating the aggregate amount of claims to be paid and the date of the adoption of the resolution declaring intention to issue bonds for the purpose of paying the indebtedness. The second section further provides that, "if, within twenty days after such publication," a petition is filed with the county clerk, signed by not less than twenty per cent of the legal voters of the county requesting a referendum on the proposition of issuing the funding bonds, then the county shall not be authorized to issue the bonds until the proposition shall have been submitted to a popular vote and approved by a majority of those voting on it at a special or general election. By the fourth section it is provided that, if no petition for referendum is filed, then the county board shall adopt a resolution fixing the details of the bonds and levying a tax for their payment. This section also empowers the county

board to fix maturity dates for the funding bonds not more than twenty years from the date of issuance. Bonds issued under the act, according to the fifth section, may be exchanged at parity for claims proposed to be paid thereby, or sold for not less than their par value. The sixth section directs the county clerk annually, when extending taxes for other corporate purposes, to extend taxes for the purpose of paying the principal and interest on the bonds authorized by the resolution providing for the issuance of the bonds and levying a tax to pay them.

Wayne county has less than 25,000 inhabitants. On July 22, 1935, its board of supervisors adopted a resolution, the preamble of which recited that the county, prior to July 1, 1935, had incurred claims for services rendered or materials furnished for corporate purposes in the amount of $120,000; that these claims had been presented to and approved by the board; that the county lacked sufficient funds to pay them, and that its best interests required the issuance of funding bonds to pay the claims. The resolution recited that the board had examined and considered the claims described in an attached schedule marked exhibit "A." Further, the resolution declared the intention of issuing funding bonds in the principal amount of $120,000, to be dated July 1, 1935, and maturing on the first days of July, 1937, and each year thereafter, to and including 1950. The county clerk was directed to publish in a local newspaper a notice of intention to issue the bonds and the notice was published in the *Wayne County Press* on July 25, 1935. No petition was filed with the county clerk requesting that the proposition to issue funding bonds be submitted to the legal voters of the county. On August 14, the board voted to reduce the proposed bond issue from $120,000 to $106,000. It thereupon authorized the issuance of bonds in this amount, reducing the amount of bonds due on each of the fourteen maturity dates $1000, and pro-

vided for the levy of taxes for the fourteen years commencing with the year 1935, in order to pay the principal and interest on the bonds. The bonds for which the challenged tax was extended were issued and sold prior to November 1, 1935.

Additional facts and circumstances are disclosed by the record. Trula Scott, deputy county clerk, recorded the proceedings of the two meetings in supervisors' record "N" of Wayne county shortly after the days they were held. The witness, who was not present at the first meeting, testified that she was not given the list of claims mentioned in the resolution adopted on July 22, to record, stating, particularly, that her superior, the clerk, had informed her it was unnecessary to record the schedule. She produced an itemized statement containing a list of claims showing an indebtedness totalling $106,000. An admittedly erroneous file mark appeared on the back of the list. From Miss Scott's testimony it appears that she saw this schedule in the office of the clerk between July 22 and August 14, and that she prepared it prior to the day first mentioned. On cross-examination, she added that it was the schedule referred to in the resolution and was on file on July 22 in the clerk's office when the resolution was passed. Upon further interrogation she said that she did not remember the precise day when the list of claims was prepared, whether before or after July 22. Alvis Wood, the county clerk, was present at the meeting held on July 22. He testified that a schedule of outstanding indebtedness against the county was then on file in his office and that, on July 22, it was in the room where the supervisors' meeting was held, available for inspection. Wood stated that the schedule of claims was with the resolution of intention to issue the bonds and in the file with the resolution. According to his testimony the board, on August 14, decided that certain claims could be compromised or disposed of otherwise; that $106,000 would be sufficient for the bond issue,

and that it instructed him to correct the original list of claims and cut it down to $106,000. A portion of the first schedule was incorporated in the second list of claims aggregating $106,000. Upon the basis of the foregoing testimony the court permitted the record of the proceedings of the board of supervisors to be amended to show the exact amount of claims to be paid out of the bond issue. The record, as amended, was admitted in evidence.

The objector contends that inclusion of a detailed list of claims to be paid, in the resolution of intention, is a mandatory requirement and that, therefore, the trial court lacked power to permit the amendment of the record of the proceedings of the board of supervisors. Counties have only those powers expressly granted by statute and such powers as are necessary to carry out express grants. (*People* v. *Baltimore and Ohio Southwestern Railroad Co.* 366 Ill. 318.) Power of the county of Wayne, as a local governmental subdivision of this State, to issue the funding bonds in controversy finds its statutory basis in the act of June 28, 1935. Exercise of the power granted must, of course, substantially follow the essential requirements of the statute. (*People* v. *Chicago Heights Terminal Transfer Railway Co.* 319 Ill. 389.) Wayne county was indebted on a large number of claims accumulated over a considerable period of time. The General Assembly had granted specific authority to issue funding bonds to pay such claims and the county resorted to its ameliorative provisions. The preliminary resolution of declaration of intention was adopted, notice was published, and, so far as the record discloses, no one sought to have a referendum on the proposition of issuing the bonds.

It is insisted, however, that the resolution of intention was fatally defective because the schedule of claims accompanying it, when adopted on July 22, was not recorded in supervisors' record "N." By section 10 of "An act to revise the law in relation to county clerks," one of the

duties of the county clerk is to keep an accurate record of the proceedings of the county board. (Smith-Hurd Stat. 1935, p. 1005.) There is no statutory requirement, however, that such proceedings be transcribed in a supervisors' record book, or in any particular manner. The act of June 28, 1935, although commanding that the declaration of intention to issue bonds shall determine the indebtedness to be paid, does not require that an itemized schedule of claims be affixed to the resolution. The county clerk testified that the schedule of claims referred to in the resolution of intention was before the board when it adopted the resolution of intention; that the schedule was available for inspection at the meeting, and that it was filed with the resolution of intention adopted on July 22. Evidence to the contrary is wanting. Nor is there evidence that any person was misled by the failure to record the schedule in the supervisors' record. Indeed, there is no evidence that anyone sought to examine it. It is not contended that any substantial injustice ensued from failure to record the schedule of claims in the first instance. The third paragraph of section 191 of the Revenue act of 1872 (Smith-Hurd Stat. 1935, p. 2694,) expressly provides that upon an application for judgment and order of sale of land for the non-payment of a delinquent tax, an amendment of the record may be allowed when there has been an attempt to comply with the law but which is ineffective because of informality or default of the clerk of the taxing body. One of the manifest purposes of this salutary provision is to safeguard the collection of public revenues from being defeated through any mechanical or ministerial error not affecting the substantial justice of the tax itself. The trial court did not abuse its discretion in allowing the record of the board of supervisors to be amended. (*People* v. *Baltimore and Ohio Southwestern Railway Co.* 353 Ill. 492; *People* v. *Chicago, Milwaukee and St. Paul Railway Co.* 326 id. 179, and 314 id. 378; *People* v. *Chicago and East-*

*ern Illinois Railway Co.* 314 id. 382, and 313 id. 361.) Moreover, the right to make amendments by a collective body having a clerk employed or authorized by law to keep its records does not depend upon statutory enactment but is common to legislative bodies and collective bodies generally. *People* v. *Chicago and Eastern Illinois Railway Co.* 314 Ill. 382.

Discrepancies in the resolutions adopted by the board on July 22 and August 14, are, however, directed to our attention. The first resolution determining the amount of indebtedness to be paid declares an intention to issue $120,000 in funding bonds, sets forth the bonds maturing on fourteen specified dates, and directs that a notice be published stating, among other things, the aggregate amount of the claims to be paid. The second resolution was necessary to fix the details with respect to issuing the bonds, and also to levy a tax. It provided for the issuance of $106,000 in bonds, and the amount of bonds maturing on the dates specified in the first resolution was reduced proportionately. The statute does not require, as the objector insists, that the amount of bonds actually issued be the same as the amount specified in the declaration of intention. Maturity of the bonds and like details in connection with their issuance, by section 4 of the act of June 28, 1935, were expressly delegated to the county board. Section 6 directs the county clerk to extend taxes to pay the principal and interest on the funding bonds authorized by the resolution providing for their issuance and levying a tax to pay them. This section does not purport to prescribe that taxes shall be extended to pay principal and interest on the amount of bonds mentioned in the resolution of intention but specifically declares that such taxes shall be extended to pay principal and interest on the bonds authorized as directed in and by the second resolution. A statute, itself, affords the best means of its exposition, and where the legislative intent can be ascertained from its provisions, that intent

will prevail without resorting to other aids for construction. (*People* v. *Continental Illinois Bank,* 360 Ill. 454.) The manifest legislative intent is that the board of supervisors had power to issue either the maximum amount of bonds or an amount less than stated in the resolution of intention and the notice published in the newspaper. Certainly, the tax-payer is in no position to complain because it became possible for the county to satisfy its current indebtedness by issuing bonds having a par value of $106,000 instead of $120,000.

We observe that a broad enabling act approved December 12, 1935, referring to the funding bonds authorized by the act of June 28, 1935, declares, among other things, "all acts and proceedings heretofore had, done and performed precedent to the issuance of such bonds, the allowance of such claims and the payment thereof from the proceeds of such bonds are hereby validated." (First Special Sess. Laws of 1935-6, p. 63.) A second curative act, approved June 9, 1936, (Fourth Special Sess. Laws of 1935-6, p. 12,) expressly provides that bonds issued under the authority of the act of June 28, 1935, shall be legal, valid and binding obligations of the issuing county, "notwithstanding the fact that the resolution declaring its intention to issue such bonds did not set out and identify the claims proposed to be paid." It is settled that the legislature may by statute validate the irregular or defective exercise of a power where the power already existed, and the proceeding sought to be cured was not one of the fundamentals of the power exercised. Conversely, the General Assembly cannot, by a curative act, make a void proceeding valid. (*People* v. *Chicago and Eastern Illinois Railway Co.* 365 Ill. 202; *People* v. *Padley,* 340 id. 314; *People* v. *Chicago, Milwaukee and St. Paul Railway Co.* 321 id. 499; *Maulding* v. *Skillet Fork Drainage District,* 313 id. 216.) In the present case, the board of supervisors of Wayne county had power to issue bonds

pursuant to the provisions of the County Funding act of 1935, and this power continued to exist until December 31, 1935, the day the act expired. The act of June 28, 1935, does not command that a detailed schedule of claims be affixed to the resolution of intention as a condition precedent to the legality of the initiating proceedings. Failure to attach such a schedule to the declaration of intention to issue bonds was, therefore, merely an inconsequential irregularity amounting to a defective exercise of a grant of power and not an absence or failure of a grant of power.

Another contention made by objector is, that the board failed to wait twenty days after the day of publication of the notice of intention, and that, hence, its action on August 14, was invalid. The collector maintains, on the contrary, that the statute grants the voters permission to petition for referendum at any time within twenty days after publication of the notice—not twenty days after the date of publication—and, no petition having been filed within twenty days after publication of the notice, it thereupon became the mandatory duty of the board to issue the bonds. The objector invokes the familiar canon of construction that in computing the time within which publication or any act provided by law is to be done within a particular time after a specified day, the first day is excluded and the last included. (Smith-Hurd Stat. 1935, p. 3137; *Fiedler* v. *Eckfeldt,* 335 Ill. 11; *People* v. *Snow,* 279 id. 289; *Brown* v. *City of Chicago,* 117 id. 21.) The gist of objector's argument is that the last day of the period of twenty days for filing a petition was August 14, and, further, because a petition could conceivably have been filed on such day the board of supervisors lacked authority to proceed with the necessary steps for issuing the bonds on August 14. The collector answers that the last day for filing a petition was August 13. No petition for referendum was filed, nor was there an attempt to file a petition, before, on, or after August 14. Whether a petition could have been filed only

during the twenty days from and after the day of publication, or, only on or before the expiration of the period of twenty days, beginning with the day of publication, is, under the circumstances of this case, a mere academic question. Moreover, section 4 of the act of June 28, 1935, does not make the expiration of the time for filing a petition a condition precedent to the adoption of the requisite bond resolution. On the other hand, if no petition is filed conformably to the provisions of section 2 the law ordains that the county board shall adopt a resolution fixing the details of the bond issue and levying a tax to pay the bonds. In short, only one prohibition against issuing the bonds is prescribed, namely, in the event a petition for referendum is filed. The tax-payers of Wayne county did not, however, elect to file a petition for referendum and the objector is, therefore, not in a position to successfully invoke the inhibition of the statute.

The burden of sustaining objections to the additional tax for Wayne county funding bonds rested upon the objector. (*People* v. *Westminster Building Corp.* 361 Ill. 153.) This, it has failed to do. It is unfortunate, however, that counties permit laxity of their officials in conducting and recording their proceedings, thereby resulting in litigation based almost entirely on procedural questions. The boards should be careful, particularly, where bond issues are concerned, or money is to be expended, which will result in additional taxation. While it is true that this court has consistently held that every intendment will be indulged in to sustain the validity of a tax levy, nevertheless the courts do expect diligence on the part of the taxing bodies.

The judgment of the county court is affirmed.

*Judgment affirmed.*