(No. 26091.—

THE PEOPLE *ex rel.* John Toman, County Collector, Appellant, *vs.* B. MERCIL & SONS PLATING COMPANY, Appellee.

*Opinion filed November 18, 1941.*

THOMAS J. COURTNEY, State's Attorney, and BARNET HODES, Corporation Counsel, (JOSEPH F. GROSSMAN, OTHO S. FASIG, J. HERZL SEGAL, and NORMAN N. EIGER, of counsel,) for appellant.

SCOTT, MACLEISH & FALK, (ROBERT S. CUSHMAN, JOHN J. O'BRIEN, JR., DALE ALLEN LETTS, ROBERT E. CORCORAN, and POMEROY SINNOCK, of counsel,) for appellee.

Mr. JUSTICE GUNN delivered the opinion of the court:

The rulings of the county court upon thirteen items of the annual tax levy of the city of Chicago for the year 1938, objected to upon application for judgment, are presented in this appeal. Inasmuch as six of these items are controlled by recent decisions of this court we will first discuss the items of the levy not involved in such opinions. All objections involved in this appeal were sustained by the county court. The county collector of Cook county appeals directly to this court as the revenue is involved.

The first objection is that the annual appropriation ordinance for corporate purposes contained estimates of revenue which were excessive because the estimated source of revenue was illegal, or not otherwise justified. There are two items involved in this objection: One has· to do with the estimate of accounts receivable contained in cur-

rent assets as of January 1, 1938, $3,075,000; the other appears in the estimate of corporate revenue other than taxes, as pari mutual brokers' licenses $1,000,000. The second objection is that there was an under-estimate of corporate revenue other than from taxes, because of an item for "reserve for delinquencies and non-collections amounting to $1,184,000." The court sustained objections to $2,550,000 of the accounts receivable item, and to the pari mutual brokers' licenses item, specified in objection No. 1, and to the reserve item specified in objection No. 2. Objections Nos. 1 and 2 will be considered together because the record discloses that $1,000,000 of the reserve item of alleged under-estimate was set up against the possibility of not collecting the $1,000,000 pari mutual brokers' licenses item.

The relevant part of the statute involved is the following part of paragraph 102 of chapter 24 of our statutes, known as the Budget law: "All such estimates shall be so segregated and classified as to funds and in such other manner as to give effect to the requirements of law relating to the respective purposes to which said assets and taxes and other current revenues are applicable, to the end that no expenditure shall be authorized or made for any purpose in excess of funds lawfully available therefor. * * * If the appropriations from any fund as set forth in such ordinance as finally adopted shall exceed in the aggregate the maximum amount which such corporate authorities are herein authorized to appropriate therefrom, all appropriations made from such fund by such ordinance shall be void," etc. Ill. Rev. Stat. 1939, chap. 24, par. 102.

Of the item designated current assets, $2,550,000 represented money owing by the county of Cook to the city of Chicago for fees due in State cases in the municipal court, which were required to be paid by the Municipal Court act. (Ill. Rev. Stat. 1939, chap. 37, par. 417.) On January 12, 1938, the city had obtained in the circuit court of Cook

county, a judgment against Cook county for the sum of $1,758,005.25 for amounts due for said purpose up to the end of 1935; the amounts due and unpaid for the years 1936 and 1937 were estimated at $800,000, and were all included in the designation of current assets and estimated to produce $2,550,000. The balance of the item of $3,075,000 represents other accounts receivable not questioned.

Paragraph 102 of chapter 24, *supra,* requires the appropriation bill to set forth estimates by classes of all current assets and liabilities of each fund as of the beginning of the year. The claim is made by appellee that since the county was resisting payment of this amount, and was appealing the case to the Supreme Court, the act requiring payment might be declared invalid, and that it was apparent the sum would not be collected during the year 1938. It did appear on January 12, prior to the adoption of the annual appropriation bill, that the judgment against Cook county was some kind of an asset, as was also the claim for the two succeeding years, being based upon the same law, which might properly be considered an account receivable.

The statute is mandatory in requiring estimates to be made of current assets. Laws enacted by the General Assembly are presumed to be valid and constitutional, and before they can be declared void it must so appear beyond a reasonable doubt. (*Grand Trunk Western Railway Co.* v. *Industrial Com.* 291 Ill. 167.) The corporate authorities of the city of Chicago had a right to assume that the law was valid, and it became their duty to include in the estimate of current assets an estimate of the amount of debt of Cook county to the city of Chicago. The fact it might not be collected during the current year 1938 would be no justification for not including it in the estimate, for even the current taxes levied for 1938 would not come into collection until the early part of 1939, but money could be realized from such taxes by issuance of tax anticipation warrants, and it is within the realm of conjecture, at least,

that the city had some plan for obtaining money from the judgments and demands it held against Cook county. While it is not material to this decision it does appear the city sold the judgments in question for the full face value. We are of the opinion the court erred in sustaining objection No. 1 to the extent it applied to the item of $2,550,000 claimed due from Cook county.

The other part of the over-estimate claimed in objection No. 1 grows out of the ordinance of the city of Chicago dated December 21, 1937, which purported to license pari mutual brokers at semi-annual license fees ranging from $500 to $2500 each, and which was estimated to produce $1,000,000. The position of the appellee, sustained by the county court, is that this ordinance was void as against public policy and as authorizing gambling transactions contrary to law, and that the city authorities had been advised by the Attorney General the ordinance was void, and, therefore, the inclusion in the estimate of current revenue from sources other than taxes consisted of an over-estimate, which rendered the appropriation void as exceeding the maximum which the city was authorized to appropriate under paragraph 102, *supra.*

The statute must be read and construed as a whole. One part cannot be singled out and considered without considering its relation to other parts of the same section. This is a familiar rule of construction. (*People* v. *Lieber,* 357 Ill. 423.) One part of this section requires a detailed estimate of all current revenue from sources other than the tax levy, and another part of the section requires that the appropriation shall not exceed, in the aggregate, the maximum amount that the city has authority to appropriate. The corporate authorities must estimate uncollected taxes of prior years, and the amount to be derived from the current taxes and from current revenue. The provision with respect to estimating the money that will be collected from current revenue is mandatory, as is, to the same ex-

tent, the provision that the appropriation shall not exceed the maximum amount that may be legally appropriated.

The legality of the methods of obtaining revenue is not the test of complying with the Budget statute. If money is authorized by ordinance to be collected as a license fee it must be estimated in the appropriation bill, but the limit of the sums that may be appropriated is the maximum amounts estimated to be received. At the time the appropriation bill was adopted there was an ordinance in effect authorizing fees to be collected from pari mutual brokers. The fact there was a public outcry over such a method of obtaining revenue nevertheless did not prevent the ordinance from being a source of current revenue, which had to be estimated. Even though the ordinance were of doubtful validity, that would not excuse failing to make an estimate of the revenue it might produce. Many ordinances properly adopted by cities are successfully attacked, but as long as they are in effect the city is not excused from including, in the budget, estimates of revenues that may be derived therefrom.

Counsel lose sight of the object of the annual appropriation bill. The requirement of the statute is to itemize revenue on hand and anticipated, and not to authorize the expenditure of more than is estimated will be received. Corporate authorities, in making their estimates, are not required to take the risk of having an appropriation held invalid by omitting estimated revenue because they fear the authority authorizing it may be voided, nor will they, on the other hand, invalidate their appropriation bill by including in their estimates moneys which they think will be derived from ordinances which are subsequently held illegal. The fact that a court vacated the pari mutual broker license ordinance is not material, because like attempts may be made to invalidate other sources of revenue, as they exist at the time of the adoption of the annual appropriation

bill, that must be estimated, and the total estimate from the various sources enumerated in the statute is the measure of the amount which may be appropriated. Under the plain terms of the Budget law the corporate authorities were required to set forth the revenue to be derived under this ordinance.

This brings us to a consideration of the reserve set up against current revenue other than taxes, to which an objection was sustained by the county court as an understatement of assets. In the estimate of corporate revenue for 1938, other than taxes, the total amount to be derived from the various sources was found to be $22,384,000; from this was deducted the sum of $1,184,000, designated "reserve for delinquencies and non-collections," leaving a total estimated revenue from other sources for the corporate purpose fund of $21,000,000. The county court sustained an objection to this reserve because, without it, the levy would have been presumably reduced by that amount.

The testimony of the chief clerk of the city comptroller shows that this reserve was set up because of the objections raised to the pari mutual license ordinance, and that a reserve equal to the estimated amount to be derived from said ordinance, plus $184,000 applying to other license ordinances and miscellaneous revenue, was included in the reserve. As pointed out above we are of the opinion it was necessary to include in the estimate the revenue to be derived from the pari mutual license ordinance, and if it was of doubtful validity, or a repeal was contemplated, a reserve would be necessary to keep the budget in balance.

Appellee does not point out in its brief how this alleged under-estimate has voided the appropriation. It merely claims that no objection was made to the judgment of the court in sustaining it. We think the errors assigned by appellant are sufficient to raise the question, in view of the fact it is so inseparably connected with the objection

made by appellee to the over-estimate in the budget, claimed to have been created by the pari mutual license ordinance, that it is properly before the court.

In its argument appellee practically concedes that if the reserve had been set up for the possible invalidity of certain ordinances it would not have been objectionable. We think the term "non-collection" is even broader because it would include not only the invalidity of the ordinance, but the repeal by the city authorities. At any rate, the effect of the county court's ruling was to eliminate $1,000,000 as an over-estimate, and an additional $1,184,000 as an under-estimate, growing out of the same estimate of revenue. We think both objections No. 1 and No. 2 should have been overruled, because, as to such items, there was a proper estimate and proper appropriation, and the basis of a proper levy, as required by the Budget law.

The county court sustained objections to taxes claimed to be produced by including in the estimate of liabilities illegal items as set up in objection No. 9. In the estimate for the corporate purpose fund of assets available on January 1, 1938, there appears to be appropriable the sum of $3,340,013.02. This represents the estimated amount of current assets on said date, after the estimated amounts of liabilities had been deducted. Among the items deducted were accounts payable $8,219,812.37, and unvouchered bills $371,938.16. Appellee claims that in making the estimate of assets and liabilities as of January 1, 1938, these two items should have been entirely omitted, because, up to and including January 1, 1938, the city of Chicago was indebted in excess of the constitutional limitation fixed by section 12 of article 9 of the constitution. The county court sustained this objection.

The position of appellee is made clear by its claim that in making up the estimate required by law, under the head of accounts payable, the entry should be nothing, and unvouchered accounts, nothing. If the estimate had been

made up in this way the estimate of assets would have been $8,591,750 more, and the $37,000,000 tax levy of 1938 reduced by such amount.

The question presented by this objection comes to this: If for the current year a valid levy is made for estimated expenditures to be made during such current year, can such levy be reduced by showing that liabilities charged against uncollected taxes of previous years have become, or may possibly become, invalid? The Budget act applying to cities having a population in excess of 500,000 (Ill. Rev. Stat. 1939, chap. 24, par. 102) requires that the city council, within the first sixty days of each fiscal year, pass an ordinance to determine the annual appropriation bill, in which the corporate authorities may appropriate such sums of money as may be deemed necessary to defray all necessary expenses and liabilities of such corporation to be paid or incurred during the fiscal year. Among other things, it must set forth estimates by classes of all current assets and liabilities of each fund as of the beginning of the year, and the amounts of assets available for appropriation in such year, either for expenditures to be made or incurred during the year, or for liabilities unpaid at the beginning thereof. It requires estimates of taxes to be received from levies of prior years.. In making up the estimate of liabilities the statute provides that they shall include (a) judgments, (b) reimbursement of the working cash fund, (c) all other liabilities, and then provides such estimates shall be so segregated and classified as to funds, and in such other manner, as to give effect to the requirements of the act, to the end that no expenditure shall be authorized or made for any purpose in excess of funds lawfully available therefor. After providing for the making of such estimates the same section provides that the ordinance shall specify the object and purposes for which appropriations are made, which shall include (a) current expenditures, (b) final judgments, (c) reimbursement of working cash fund, (d) all other lia-

bilities, and (e) amount estimated sufficient to cover loss and cost of collecting taxes.

To support the judgment of the county court appellee relies upon *People* v. *Schiek,* 368 Ill. 353, where the court held invalid an appropriation carried into the levy of an item to be used in the payment of interest on tax anticipation warrants. The court, in that case, recognized that interest on tax anticipation warrants was required by the statute to be appropriated, but could not enter into a computation of the amount of the tax levy because such interest was not a debt and did not create a general liability against the city. In making the levy for taxes the statute provides (paragraph 123 of chapter 24) "the city council * * * shall ascertain the total amount of appropriations for all corporate purposes legally made and to be collected from the tax levy of that fiscal year; and, by an ordinance specifying in detail the purposes for which such appropriations are made * * * shall levy the amount so ascertained upon all of the property subject to taxation within the city or village," etc.

Appellee construes this provision as requiring the city to determine whether a corporate expense, incurred in a prior year and to be paid out of a prior levy of taxes must properly be deducted, when arriving at the appropriable amount available for the current year. In other words, that the corporate authorities must, at their peril, decide whether they can avoid payment of a liability, and thus be able to reduce the levy for the current year. The statute imposes no such duty upon a municipality in setting up its budget. Paragraph 102, *supra,* provides that the uncollected taxes of prior years shall be estimated, and the amount owing on judgments or due the working cash fund shall be estimated, and *all other liabilities* shall be estimated. There is nothing in the Budget law requiring the city to determine whether it can pay a liability with tax money after it is collected, nor is there anything requiring it to

decide whether a prior debt can be paid out of a prior tax, when collected. It is true the *Schiek case* held that money could not be levied for paying interest on tax anticipation warrants, or such warrants paid from any source except the particular tax against which the warrant was drawn. In that case the city attempted to levy for something designated as a liability which could not, in any sense, ever be a liability, not only because the statute forbade such interest to be paid from any source except the tax anticipated, but also because section 9 of article 9 of the constitution prohibits the municipality from appropriating money for anything but a corporate purpose, and obviously something which could not be a debt could not be a corporate purpose.

In attempting to bring the estimate of accounts payable and unvouchered bills within the same classification as that discussed in the *Schiek case,* appellee assumes that the evidence it offered, tending to show the city of Chicago was indebted in excess of the constitutional limit, *ipso facto* established that such accounts payable and unvouchered bills became absolutely void. This does not necessarily follow. There are many instances in which an amount owing by a municipality can be collected even though it, at the time, be indebted in excess of the amount fixed in the constitution.

It was held in *Kocsis* v. *Chicago Park District,* 362 Ill. 24, that this section of the constitution has reference to future indebtedness. In *Euziere* v. *Highway Comr.* 346 Ill. 131, it was held that it was not necessary in a suit against a highway commissioner to recover for materials furnished, to allege, as a condition precedent, that funds were available to pay for the same, as he had the power *prima facie* to purchase such materials; and in *Kocsis* v. *Chicago Park District, supra,* it was held that the assumption of liability, upon consolidation of several park districts into one new park district, could not be prevented because at the time of consolidation the debt existing ex-

ceeded the constitutional limit, if such limit were not exceeded at the time the debt was created.

The levy of a tax for current expenses is not incurring an indebtedness. (*People* v. *Illinois Central Railroad Co.* 309 Ill. 277; *Schnell* v. *City of Rock Island,* 232 id. 89; *People* v. *Chicago and Texas Railroad Co.* 223 id. 448; *People* v. *Chicago and Alton Railroad Co.* 253 id. 191.) In *People* v. *Chicago and Texas Railroad Co. supra,* we said: "We are of the opinion that the fact that a municipal corporation is indebted up to the constitutional limit of five per cent does not prevent such municipality from levying taxes for any lawful corporate purpose within the limits fixed by the laws governing such municipal corporations. To hold otherwise would be to deprive all municipal corporations that were indebted up to the constitutional limit of the only means provided by the law by which said corporations can pay their debts or defray their current expenses." The estimate of expenditures contained in the appropriation bill for the current year aggregates a total amount of the *tax levy* and *current revenue* from other sources. Accounts payable are considered only as reducing the amount to be received from the levies of prior years.

These illustrations merely go to the point that the mere showing that a municipal corporation has reached its constitutional limit of indebtedness does not, in all instances, prevent the appropriation and expending of money. If the city did not include accounts payable in the estimate of liabilities in the annual appropriation bill, whether legal or otherwise, they could not be paid. The legislature did not intend any such result. It is common knowledge that the city of Chicago would not, during the year 1938, be able to collect all of these taxes or miscellaneous revenue. Whether the accounts payable have become void by reason of not having been paid out of current revenue is not for us to determine in this proceeding. It is not denied they were incurred and became a liability. Having become a

liability they must be contained in the estimate of liabilities. If they are void, and money is to be used out of uncollected taxes to pay them, it could only amount to a diversion or misappropriation, which may be remedied in equity at the suit of a taxpayer to prevent misappropriation. *People* v. *Westminster Building Corp.* 361 Ill. 153; *Gates* v. *Sweitzer,* 347 id. 353; *People* v. *Hassler,* 262 id. 133.

The contention of appellee, if sustained, would require the tax-paying body, in cases similar to this, to establish the legality .and right to pay every liability existing against it on objections which go to the legality of the tax imposed. This is contrary to the practice that has hitherto prevailed, that the burden of proof is upon the taxpayer to establish the invalidity of the levy. It is our opinion that the county court improperly sustained objection No. 9.

In objection No. 10 it is claimed that the revenue provided for all corporate fund appropriations is $9035.91 in excess of the appropriations, and will produce an illegal rate of $.000463. The amount of the excess grows out of the fact that the total amount available for appropriation was $61,540,013.02, and the total amount shown to be appropriated was $61,530,977.11. The difference forms the basis for this computation.

The county clerk in extending the rates, as required by law, found that the total of all taxes would require a rate of $3.591343, and, therefore, as provided by statute, (Ill. Rev. Stat. 1939, chap. 120, par. 644,) extended the taxes at the rate of $3.60. If the estimated excess, as shown by objection No. 10 is added to the actual computed rate it brings it to $3.590880, which also would have to be extended by the county clerk at the rate of $3.60. In *People* v. *North Shore Theatre Building Corp.* 375 Ill. 208, this court held it was unnecessary to pass upon the validity of a tax levy under such circumstances, as any decision the court might make would not alter the rate. Since there are thirteen items of taxes argued, and this particular objection

involves the infinitesimal part of one cent in the rate, the burden is upon the objector to show that the base rate fixed by the county clerk will be changed. The objection was improperly sustained by the county court.

Objection No. 11 involves rates, claimed to be excessive, for the library fund of the city of Chicago. The estimate contained in the budget, including current assets on hand January 1, 1938, together with the tax levy of miscellaneous rates, aggregates $2,991,586.49. The appropriation for the library fund aggregated $2,310,000. The difference $681,586.49 is claimed to be excessive. This contention is based upon the theory that uncollected taxes of prior years, $901,361.87, set out in the estimate of taxes to be received, must be taken as of that value in determining the additional amount that may be levied for library purposes. The whole claim of the objector is based upon the assertion that the estimate of uncollected taxes of former years constitutes an *estimate of the value,* and that the corporate authorities are bound by such estimated value in making the levy for the current year. The objector reaches this result by construing the words in the statute, paragraph 102 of chapter 24, *supra,* "estimates of taxes to be received from rates of former years shall be net," etc., as fixing such value to uncollected taxes that it limits the levy of taxes to such further sum as will, with other current revenue, equal the appropriation for expenditures. This is not what the statute means or requires. The words "taxes * * * net" etc., are defined as being the amount of uncollected taxes less (a) loss and cost, (b) uncollectible taxes, (c) forfeitures, (d) anticipation warrants, (e) interest accrued thereon, (f) *future interest on such warrants.* (Par. 102, *supra.*) In other words if $1000 of uncollected taxes from levies of prior years appeared on the collector's books, and the deductions specified in the statute are equal to an estimated amount of $800, the net amount to be placed in the estimate of taxes from levies of prior years would be the

difference, $200. The statute is silent on the question of requiring an estimate of value. It simply requires an estimate of the amount of former levies, less the specified charges that may be against it. Upon this issue appellee again cites the *Schiek case* as supporting the proposition. The point was not involved in the *Schiek case*. But it further appears, from the facts in that case, the court was not discussing estimates of taxes from levies of prior years, but estimates of current revenue from sources other than the tax levy which covers such items as licenses, permits, and the like. It was there said: "There is to be taken into consideration the amount of miscellaneous receipts, which, judging from past experience, will probably be received. The city council is then authorized to levy a tax for the amount necessary to pay corporate expenses, as appropriated for, above the amount received from such miscellaneous sources." It follows *People* v. *Sergel,* 269 Ill. 619, where, before the passage of the Budget act, a municipal corporation was required to take into consideration miscellaneous revenues, together with taxes to be levied, in making up its annual appropriation.

Current revenue to be derived from sources other than taxes levied is required by the statute to be set up in a different way in the budget. Three different assets are required to be set out: (a) Estimate of taxes from prior years, net, (b) estimate of taxes to be levied, (c) estimates of other current revenues. We have pointed out above what is meant by estimate of taxes net. In the *Schiek case* the city carried into the levy one of the amounts which must be deducted from levies of prior years, viz., accrued interest on tax anticipation warrants. The same objection here made to the library tax was made in *People* v. *Diversey Hotel Corp.* 364 Ill. 298, where it was held that a levy, made in almost the identical manner, was valid in the absence of any showing that the estimated expenditures could be paid without a levy of the tax, and followed *People* v.

*Maxwell & Co.* 359 Ill. 570, holding that the city was not required to give value to uncollected taxes merely because they were set forth in the estimate. These cases are determinative of the objection here involved, and there is nothing contained in the *Schiek case* which modifies or changes our holdings therein. Objection No. 11 should have been overruled.

Objection No. 15 challenged in the appropriation for corporate purposes an item of $75,000 applicable to the fire department, asserted to be not itemized as required by law, and, therefore, illegal and void. The court sustained this objection. The item objected to is as follows:

> "Miscellaneous
>
> 51-B-1 Material and supplies for general operation, for apparatus repairs and for repairs and replacement of tool equipment................ $ 75,000."

It is contended this appropriation amounts to two separate general purposes: First, for material and supplies, apparatus repairs and repairs to tool equipment; and second, for replacement of tool equipment. The language in this appropriation is general, but it was intended to include material and supplies for the general operation of the fire department, for apparatus repairs for the fire department, and for repairs and replacement of tool equipment for the fire department. The general object is to keep the fire department in operation. It is common knowledge that fire equipment is commonly known as apparatus, and that such fire apparatus carries with it tool equipment in the form of ladders, axes, and other implements suitable to effect the ends required of fire fighting apparatus. We think the subject matter here is material and supplies for the general operation of the fire department, and that repairs to the apparatus itself, and replacement of the tools that go with the fire apparatus, are all embraced in the same general subject matter, and that is to keep the equipment in shape

for operation. The language "replacement of tool equipment," taken by itself, has reference necessarily to tool equipment of the fire apparatus, and does not constitute a separate general item of expenditure. In *People* v. *Sage,* 375 Ill. 411, the effect of the appropriation was to authorize money to be spent to hire motor trucks and other equipment for street cleaning purposes, or to purchase the equipment for the same purpose, and clearly involved two different ways of accomplishing the same object. In this case, it is not made to appear that replacement of tool equipment does not properly describe a material or supply to be used in the general operation of the fire department. We think the item was sufficiently specific to give the taxpayer information as to the purpose to which the tax would be applied. (*People* v. *Mills Novelty Co.* 357 Ill. 285; *Siegel* v. *City of Belleville,* 349 id. 240.) Objection No. 15 should have been overruled.

Objection No. 5 covers two current appropriations including unpaid bills. Appellee concedes that under authority of *People* v. *Advance Heating Co.* 376 Ill. 158, the judgment of the trial court should be reversed. In view of this no further comment is required.

Objection No. 6, sustained by the trial court, involved the appropriation of $3,700,000 for loss and cost, including forfeitures and abatements. It involves the same question disposed of in *People* v. *Sage, supra,* and *People* v. *Otis,* 376 Ill. 112. In those cases we held these constituted proper items of appropriation, and upon those authorities the judgment of the county court in sustaining the objection was error.

Objection No. 7 involves the appropriation for hire of teams, cars and motor trucks, and for the leasing and purchasing of waste collection equipment. The trial court sustained the objection. An appropriation in identical form was before us in *People* v. *Sage, supra.* Appellant has reargued the same question disposed of in that case. It is

unnecessary to say again what we set forth in the opinion in that case. We adhere to what we there said, in consequence of which the judgment of the county court upon this item was correct at the time, but the ruling is passed upon later in this opinion.

Objection No. 8 involves three items, one of $25,000 to be expended by various departments under the direction of the mayor and city comptroller in connection with WPA projects. An item identical with this one was involved in *People* v. *Advance Heating Co. supra,* and held invalid because it was not sufficiently itemized. Although appellant reargues the point involved we adhere to our ruling in that case. Objection No. 8 also contains an appropriation of $5000 for the city's contribution to WPA projects and $20,000 for the services of engineers, accountants, investigators and such other employees as needed, including transportation in connection with WPA and PWA requirements. The same question was involved in *People* v. *Otis, supra,* and the validity of such appropriations sustained. Appellee concedes that the last two items of objection No. 8 are controlled by that case. The judgment of the trial court in sustaining objections to the first item of objection No. 8 is passed upon later in this opinion but its action in respect to the other two items is overruled.

Objection No. 12 involves the same objection disposed of in *People* v. *Advance Heating Co. supra,* where this court held that the supplemental levy for tuberculosis sanitarium purposes in excess of 7 cents on the $100 need not be submitted to a referendum. Exactly the same question is presented here. It was, therefore, error for the county court to sustain objection No. 12.

Objection No. 13 involved the levy of the city of Chicago for judgment tax fund purposes. It is claimed it was not sufficiently itemized. The levy is in the same form as that considered in *People* v. *Advance Heating Co. supra,* which we held was not objectionable on that ground. The

judgment of the county court in sustaining this objection is, therefore, overruled.

Objection No. 14, which was sustained by the county court, involved the library building fund. Appellee in its brief and argument says it now withdraws the objection, and it is, therefore, necessary to reverse the judgment of the county court as to such objection.

The court sustained objections in the aggregate to taxes amounting to the sum of $22,168,447.18, and also sustained objections to a proportionate share of loss and cost of collection in the further sum of $2,216,844.71. In other words, when the court sustained a given objection it also added to the amount so sustained ten per cent, which was taken out of the reserve for loss and cost. The objection to proportionate share of loss and cost is included in the objections to the specific item or items of the levy, because each specific objection concluded with the following: "The tax rate produced by said illegal and void appropriation, including a proportionate share of loss and cost of collection, and hereby objected to is ——% on each $100 of valuation." Appellee claims the point is not available to appellants on appeal, but since a ruling of the county court in sustaining a given objection carried with it the additional sum of ten per cent for loss and cost, a decision on the main item of the objection necessarily carries with it the correctness of the court's rulings in adding loss and cost thereto. Moreover, we think a consideration of the question is open under appellant's fourteenth assignment, which challenged the trial court's ruling in sustaining objections for proportionate amount of loss and cost in the challenged items of the tax levy.

Neither side has been very helpful with suggestions on this particular objection. The item of loss and cost was subject to a separate objection, which the court sustained. When the court sustained the objection for the entire item of loss and cost that, in itself, included the loss and cost

covered in the specific objection. The action of the trial court amounted to sustaining the entire item of loss and cost, and an additional loss and cost of ten per cent of the amount of each objection sustained. This is not permissible, and no justification is pointed out in appellee's brief for such course of action. Appellee made specific objections to specific items. Among them was the entire item of loss and cost. When that was sustained by the court there was no other loss or cost item for the judgment of the court to operate upon, and even in the cases where the judgment of the trial court is affirmed in sustaining objections, it was not proper to add to the specific item the proportionate part of loss and cost in question, because loss and cost was not only covered by a separate objection, but for the further reason that loss and cost was no part of the other separate appropriations objected to. This action of the trial court was erroneous.

After the cause was submitted to this court, but before judgment had been entered therein, the General Assembly enacted a curative act, which was approved by the Governor on June 4, 1941, with an emergency clause making it immediately effective. It purports to validate taxes held invalid for lack of proper itemization. This would affect items described in objection No. 7 and the $25,000 item in objection No. 8.

At the time the cause was submitted to this court both of said objections had been sustained by the county court, which, in that regard, was the court of general jurisdiction. In *People* v. *Clark,* 300 Ill. 583, we held that under article 3 of the constitution, the legislature did not have the power, by a validating act, to change the judgments of the Supreme Court or direct it to set a judgment aside and enter a different one. Judgment had not been entered in this court at the time the curative act became effective. It has been held many times that where the legislature has changed the law pending an appeal, the case must be dis-

posed of by the reviewing court under the law as it *then exists,* and not as it was when the judgment was entered in the trial court. *Vance* v. *Rankin,* 194 Ill. 625; *People* v. *Dix,* 280 id. 158; *People* v. *Stitt,* 280 id. 553; *People* v. *Madison,* 280 id. 96; *People* v. *Sandberg Co.* 282 id. 245.

It was within the power of the legislature to enact curative law making valid tax levies insufficiently itemized, because there was merely an illegal or defective exercise of a power existing in the city. (*People* v. *Southern Railway Co.* 367 Ill. 389; *People* v. *Chicago and Eastern Illinois Railway Co.* 365 id. 202.) Private rights which have been vested by a court cannot be taken away by subsequent legislation. (*McCullough* v. *Virginia,* 172 U. S. 102, 43 L. ed. 382.) The fact that the curative act in this case was passed after the judgment was entered in the trial court would not affect private rights, because the suit is for the enforcement of a public right, and appellee's interest as a tax payer is only incidental. (*Hodges* v. *Snyder,* 261 U. S. 600, 67 L. ed. 819; *Rafferty* v. *Smith,* 257 id. 232, 66 L. ed. 208.) It follows that although objections 7 and 8 were properly sustained by the trial court the validating act above mentioned has cured the objection that such taxes were insufficiently itemized, and rendered such levies valid. In *Rafferty* v. *Smith, supra,* where a judgment for refund of taxes had been entered because they had been illegally imposed, a statute subsequently enacted validating the original tax was held valid and enforcible, and the judgment of refund entered in the trial court reversed.

The judgment of the county court of Cook county in sustaining appellees' objections Nos. 1, 2, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14 and 15 is reversed, and the cause is remanded to said court, with directions to overrule such objections.

*Reversed and remanded, with directions.*